[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 27, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13130
Non-Argument Calendar
_____

D. C. Docket No. 06-20648-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RENIER HERRERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 27, 2008)**

Before DUBINA, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Renier Herrera appeals his convictions and sentences for

possession of cocaine base, in violation of 21 U.S.C. § 844, possession of marijuana, in violation of 21 U.S.C. § 844, and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The facts of Herrera's arrest are simple and straightforward. Detective Jonathon Streetzel ("Detective Streetzel") of the Miami-Dade police department observed as Herrera parked a sports utility vehicle ("SUV") a few feet from the detective's unmarked car in a shopping center parking lot. Within minutes, another man parked alongside Herrera, approached the driver's side of Herrera's SUV, and handed Herrera what appeared to be a bag of crack cocaine in exchange for money. Detective Streetzel followed Herrera as he left the parking lot and stopped the SUV soon thereafter. Detective Streetzel smelled burning marijuana as he approached the SUV, and officers uncovered marijuana in the ashtray, marijuana and crack cocaine in Herrera's pocket, and a loaded handgun jutting out from underneath the driver's seat.

On appeal, Herrera argues that the district court erred in (1) denying his motion to suppress evidence that was seized pursuant to the stop of his vehicle, (2) enhancing his sentence under the Armed Career Criminal Act ("ACCA"), and (3) enhancing his offense level under the sentencing guidelines for possession of a

2

firearm in connection with another felony offense.[1]  For the reasons that follow, we find it necessary to address his first two issues only, and we affirm.

*I. Motion to Suppress*

Herrera argues first that Detective Streetzel's observations provided an insufficient basis for the subsequent stop of Herrera's vehicle.  He contends that the officer observed nothing more than the everyday actions of presumably innocent patrons of a shopping center, and the subsequent discovery of contraband does not justify an initially unlawful detention.

We review the denial of a motion to suppress under "a mixed standard of review, reviewing the court's findings of fact for clear error and its application of the law to those facts *de novo*."  *United States v. Dunn*, 345 F.3d 1285, 1288 (11th Cir. 2003) (quotations and citations omitted).  On review of the denial of a motion to suppress, we construe all facts in the light most favorable to the prevailing party below.  *United States v. Perez*, 443 F.3d 772, 774 (11th Cir. 2006).

The stop of a motor vehicle may be justified by a reasonable suspicion of criminal activity.  *See United States v. Lindsey*, 482 F.3d 1285, 1290-91 (11th

---

[1] Herrera also argues that the court erred in enhancing his sentence under ACCA based on his prior convictions that were neither charged in the indictment nor proven to the jury beyond a reasonable doubt.  However, he acknowledges that the law of the Supreme Court allows for such use of his prior convictions.  *See Apprendi v. New Jersey*, 530 U.S. 466, 489, 120 S. Ct. 2348, 2362-63 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

3

Cir.), *cert. denied*, 128 S. Ct. 438 (2007). "To have reasonable suspicion, an officer conducting a stop must have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *Id.* at 1290 (quotations and citations omitted). "We examine 'the totality of the circumstances' to determine whether the police had 'a particularized and objective basis for suspecting legal wrongdoing.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002)). Further, "[a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000). "In examining the totality of the circumstances, a reviewing court must give due weight to the officer's experience." *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991).

Under the totality of the circumstances, including Detective Streetzel's experience observing similar drug transactions in the same location, we conclude that the district court did not err in finding that the detective had reasonable suspicion to stop Herrera's SUV. Accordingly, we affirm his convictions.

*II. Armed Career Criminal Enhancement*

Next, Herrera argues that the district court erred in finding that his prior

4

conviction in Florida for high-speed chase constituted a violent felony for purposes of enhancing his sentence as an armed career criminal, per 18 U.S.C. § 924(e). He contends that the statutory elements of this offense, along with the charging document, demonstrate that it is not a violent felony, as it neither requires damage to persons or property nor has as an element conduct that presents a serious risk of harm.

We review *de novo* whether a prior conviction constitutes a violent felony for purposes of the § 924(e) armed career criminal enhancement. *United States v. Day*, 465 F.3d 1262, 1264 (11th Cir. 2006). The ACCA requires a minimum sentence of 15 years imprisonment for a defendant who violates 18 U.S.C. § 922(g) and has 3 previous convictions for "a violent felony or serious drug offense." 18 U.S.C. § 924(e)(1). To that end, the ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B). At the time of Herrera's conviction, Florida law

5

provided that:

> Any person who, in the course of unlawfully fleeing or attempting to elude a law enforcement officer in an authorized law enforcement patrol vehicle . . . having knowledge of an order to stop by a duly authorized law enforcement officer, causes the law enforcement officer to engage in a high-speed vehicle pursuit commits a felony of the third degree . . . .

Fla. Stat. § 316.1935(2) (1996).

"In determining whether a particular offense falls within [§ 924(e)(2)(B)], the Supreme Court has directed trial courts to pursue a categorical approach, 'looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.'" *United States v. Wilkerson*, 286 F.3d 1324, 1325 (11th Cir. 2002) (quoting *Taylor v. United States*, 495 U.S. 575, 600, 110 S. Ct. 2143, 2159 (1990)). Further, we have held that "our cases interpreting 'crime of violence' under [U.S.S.G.] § 4B1.2 provide important guidance in determining what is a 'violent felony' under the ACCA[,] because the definitions for both terms are virtually identical." *United States v. Taylor*, 489 F.3d 1112, 1113 (11th Cir.) (quotations and citations omitted), *petition for cert. filed*, (U.S. Nov. 16, 2007) (No. 07-668). In this regard, we have held that felony fleeing and eluding in Florida constitutes a "crime of violence" within § 4B1.2(a)(2), as "[t]he dangerous circumstances surrounding a person's attempt to flee from law enforcement coupled with the person's operation of a motor vehicle

6

most assuredly presents a 'potential risk of physical injury' to others." *United States v. Orisnord*, 483 F.3d 1169, 1182-83 (11th Cir.), *cert. denied*, 128 S. Ct. 673 (2007) (quoting U.S.S.G. § 4B1.2(a)(2) and interpreting Fla. Stat. § 316.1935(3) (2004)).

Here, although *Orisnord* involved a separate provision of Florida's fleeing and eluding statute, our reasoning is equally applicable to the statute under which Herrera was convicted, as both offenses similarly proscribe conduct involving motorists who flee from or attempt to elude law enforcement officers. *Compare* Fla. Stat. § 316.1935(2) (1996) ("Any person who, in the course of unlawfully fleeing or attempting to elude a law enforcement officer . . . causes the law enforcement officer to engage in a high-speed vehicle pursuit commits a felony in the third degree."), *with* Fla. Stat. § 316.1935(3)(a) (2004) ("Any person who willfully flees or attempts to elude a law enforcement officer . . . and during the course of the fleeing or attempted eluding . . . [d]rives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, commits a felony of the second degree."). Accordingly, the fleeing motorist who causes a high-speed chase in violation of former § 316.1935(2) creates the very same serious risk of potential injury to pedestrians, other drivers, and police officers. Further, as with U.S.S.G. § 4B1.2(a)(2)'s residual definition of

a crime of violence, the plain language of 18 U.S.C. § 924(e)(2)(B)(ii) "makes clear that the potential risk of injury, rather than actual violence or actual injury, is the touchstone of a [violent felony]." *Orisnord*, 483 F.3d at 1182; *see* 18 U.S.C. § 924(e)(2)(B)(ii). Therefore, we hold that the district court did not err in finding that Herrera's prior conviction for high-speed chase constituted a violent felony and, in turn, enhancing his sentence under the ACCA.

Moreover, as a result of our holding, we do not address Herrera's third issue regarding the enhancement of his guidelines offense level for possession of a firearm in connection with another felony offense, per U.S.S.G. § 2K2.1(b)(6). Herrera's offense level with the § 2K2.1(b)(6) enhancement was 28. However, after finding that Herrera qualified as an armed career criminal, the court was required to apply an offense level of 33. *See* U.S.S.G. § 4B1.4(b)(3)(B). For the above-stated reasons, we affirm Herrera's convictions and sentences.

**AFFIRMED.**